1   **WO**

2

3

4

5

6                **IN THE UNITED STATES DISTRICT COURT**

7                   **FOR THE DISTRICT OF ARIZONA**

8   **UNITED STATES OF AMERICA,**       )
                                   )

9           **Plaintiff,**       )  **Citation No. P0358771**
                                 )  **Citation No. P0358773/A106**

10           **v.**              )
                                 )     **ORDER**

11   **MARK EUGENE CHEEK,**          )
                                 )

12           **Defendant.**       )
  _____)

13

14         On the evening of January 29, 2008, Defendant was

15   arrested by National Park Service ("NPS") law enforcement

16   personnel at mile post 551 on Arizona Highway 89.  Defendant was

17   charged with driving while intoxicated, in violation of 36

18   C.F.R. §4.23(a)(1), and with having a blood alcohol content of

19   greater than .08 while operating a motor vehicle, in violation

20   of 36 C.F.R. §4.23(a)(2).  Defendant was also charged with

21   providing false information to the arresting NPS Ranger, in

22   violation of 36 C.F.R. §2.32(a)(3).  Before the Court is

23   Defendant's motion to suppress the "fruits" of the traffic stop,

24   i.e. the Ranger's physical observations of Defendant's alleged

25   intoxication and the results of the Intoxilyzer 8000 tests

26   conducted by the Ranger.  Also before the Court is Defendant's

27   motion to dismiss the charge of providing false information in

28   violation of 36 C.F.R. §2.32(a)(3). Defendant asserts that, as

a matter of law, the Defendant's statement denying he was the suspect involved in a Page gas station drive-off did not violate the NPS regulation.

**Facts**

The City of Page is located in northern Arizona, adjacent to Lake Powell and mere minutes from the Arizona/Utah state line.  The National Park Service's Glen Canyon National Recreation Area ("GCNRA"), within which Lake Powell is located, is adjacent to the boundaries of the City of Page.  The evidence previously presented to the Court in support of Defendant's motions reflected the following:

On the evening of January 29, 2008, shortly before 10:30 p.m., a white male obtained $70.07 worth of gasoline at a gas station located at 57 S. Lake Powell Boulevard in Page, Arizona.  The individual then drove away without paying for the gasoline.  The clerk on duty ran after the vehicle, which she described as a tan colored SUV.  The clerk wrote down a partial Arizona license plate number for the vehicle, i.e. "764." The SUV was last observed by the clerk northbound on Lake Powell Boulevard.  The clerk notified the Page Police Department, which responded to the gas station at approximately 10:30 p.m.  The responding officer interviewed the clerk and reviewed a surveillance video of the individual involved in the drive-off incident at the gas station.  The officer viewed video of the drive-off suspect entering and leaving the gas station.

The investigative information, i.e., the description of the suspect and his vehicle, was conveyed to a Page Police

-2-

Department dispatcher.  The dispatcher broadcast an "attempt to locate" ("ATL") to patrolling Page Police Department officers, which was rebroadcast by the NPS dispatcher at the Glen Canyon National Recreation Area.

Ranger St. Clair of the NPS was on duty near Lake Shore Drive (one of the entrances into the GCNRA) and Highway 89 when he received the ATL and observed a "beige" SUV with Arizona plate number 764 ZDF and a male driver pass his location, headed northbound on Highway 89 towards the state line.  The Ranger followed the vehicle and, as the SUV and the Ranger's vehicle approached the port of entry inspection station, the Ranger stopped the SUV.  The Ranger initially effected the stop by activating his emergency lights and then his siren.  The port of entry inspection station on Highway 89 is within the boundary of the GCNRA.

The Ranger testified the stop was based solely upon the ATL issued by the Page Police Department, which included the partial Arizona license plate number "764," the vehicle description as a beige SUV, and the description of the driver as a white male wanted by the Page Police Department for failing to pay for gasoline at a gas station in Page.  The Ranger further testified the port of entry station was the safest place to stop the SUV along that portion of Highway 89 because the pavement is substantially wider at that location.  The Ranger also testified the issuance of ATLs for failure to pay for gasoline is a weekly occurrence.  Ranger St. Clair testified that sometimes the drive-offs are honest mistakes by the driver and other times

-3-

they are found to be criminal thefts.

After stopping the SUV, the Ranger approached the vehicle and informed the driver he needed to return to the gas station and pay for the gasoline.  The driver denied having been at the gas station.  The Ranger then notified the Page Police Department that he had stopped the Defendant's SUV.  The Ranger requested that the Page Police Department officers respond to the Ranger's location and determine whether the driver was in fact the individual wanted for the theft of the gasoline.

While waiting for the Page Police Department officers to arrive, the Ranger noticed the odor of alcohol on the Defendant's breath, and that his eyes were glassy and bloodshot, and that the Defendant's speech was slightly slurred.  The Page Police Department officers then arrived and identified the Defendant as their suspect for the drive-off.  The Defendant was placed under arrest by the Page Police Department officers for the theft of the gasoline.

Immediately afterward Defendant was arrested by Ranger St. Clair for driving under the influence of alcohol in violation of the NPS regulations.  The Ranger then transported Defendant to the Coconino County Jail in Page, where two Intoxilyzer 8000 breath tests were given to Defendant.  The Intoxilyzer 8000 tests resulted in Blood Alcohol Content ("BAC") readings of .218 and .209.  Defendant was charged by the NPS Ranger with operating a motor vehicle under the influence of alcohol, in violation of 36 C.F.R. §4.23(a)(1) and with having a blood alcohol content of greater than .08 while operating a

-4-

motor vehicle, in violation of 36 C.F.R. §4.23(a)(2).  Defendant was also charged with providing false information to the Park Ranger, i.e., denying he was at the gas station in Page.

On January 30, 2008, in the City of Page Magistrate Court, Defendant pled guilty to one count of violating Arizona Revised Statutes § 13-1802 (A)(6), Theft of Services, a Class 1 misdemeanor.

**Jurisdiction**

Federal jurisdiction within the boundaries of the Glenn Canyon National Recreation Area is generally proprietary in nature.  See <u>United States v. Carter</u>, 339 F. Supp. 1394, 1396 (1972).  Pursuant to 16 U.S.C. § 3, the Secretary of the Interior promulgated the regulations at issue in this matter, 36 C.F.R. §2.32(a)(3), §4.23(a)(1), and §4.23(a)(2). The United States Congress has also authorized the Secretary of the Interior to enter into mutual aid agreements with state and local law enforcement agencies and fire-fighting agencies outside the National Park System.  <u>See</u> 16 U.S.C. § 1b(1) (2000 & Supp. 2008).  The Secretary of the Interior is also authorized to enter into cooperation agreements with these agencies providing for the enforcement of state and local laws within the National Park Service system.  See <u>id.</u> § 1a-6(c)(2).

Pursuant to Arizona state law, the City of Page may enter into mutual aid law-enforcement agreements with the NPS. Ariz. Rev. Stat. Ann. §§ 11-951 to 11-952 & 13-3872 (2001 & Supp. 2007).  The City of Page and the Glenn Canyon National Recreational Area have entered into such a mutual assistance

-5-

agreement.   Insofar as it is relevant to this matter, the City of Page and the NPS have agreed to "[r]espond to requests for assistance and backup if and when resources and equipment are available."   Government's Supplement to Response, Attach. A at 2.

### Analysis

### A. Defendant's Motion to Suppress

Defendant asserts that the Park Ranger's stop of Defendant, predicated on the Page Police Department's ATL, was unreasonable and, accordingly, prohibited by the Fourth Amendment to the United States Constitution. Relying on United States v. Grigg, 498 F.3d 1070 (9th Cir. 2007), Defendant argues that, because the traffic stop was unreasonable, the fruits of the stop must be suppressed.

The Ninth Circuit Court of Appeals held in Grigg that the "Terry stop"[1] of an individual, based upon a citizen's complaint that the individual had been playing his car stereo at an excessive volume earlier in the day, presumably a misdemeanor

_____

[1] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968).  The stop of an automobile and detention of the driver constitutes a "seizure" within the meaning of the Fourth Amendment, even if the purpose of the stop is limited and the resulting detention relatively brief.  See, e.g., Delaware v. Prouse, 440 U.S. 648, 653, 99 S. Ct. 1391, 1395 (1979).  The constitutional permissability of a specific detention or "seizure" of the occupant of an automobile for the purpose of questioning is evaluated by the standard stated in Terry.  See, e.g., Adams v. Williams, 407 U.S. 143, 92 S. Ct. 1921 (1972).  The "less than probable cause" or "specific and articulable facts" standard established in Terry as an exception to the warrant requirement is specifically premised on the exigencies of ongoing or imminent criminal activity.  See Terry, 392 U.S. at 1-40, 88 S. Ct. at 1868-89.

or civil violation under state law, was unreasonable under the circumstances and violated the Defendant's rights under the Fourth Amendment.    The Ninth Circuit reversed the District Court's refusal to suppress an unregistered automatic rifle found in Grigg's car as a result of the stop and which the government sought to prosecute the Defendant for possessing. The Ninth Circuit reached this conclusion after reviewing <u>United States v. Hensley</u>, 469 U.S. 221, 105 S. Ct. 675 (1985).[2]

In <u>Hensley</u>, twelve days after an armed robbery in St. Bernard, Ohio, police officers in Covington, Kentucky, stopped the defendant's automobile based upon a "wanted flyer" issued by the St. Bernard Police Department indicating the defendant was wanted for investigation of an aggravated robbery.   The Supreme Court framed the question as whether a Terry stop was reasonable, within the confines of the Fourth Amendment, as opposed to whether the officers had probable cause to arrest the defendant. The Supreme Court stated:

> The law enforcement interests promoted by allowing one department to make investigatory stops based upon another department's bulletins or flyers are considerable, while the intrusion on personal security is minimal. The same interests that weigh in favor of permitting police to make a *Terry* stop to investigate a past crime, *supra*, at 681, support permitting police in other

---

[2] Both Defendant and the government analyze the law and the facts of this matter as a Terry stop. Neither party suggests the Court should address the issue as whether there was probable cause to arrest Defendant under the "collective knowledge" doctrine.   <u>See</u> <u>United States v. Ramirez</u>, 473 F.3d 1026, 1033 (9th Cir.), <u>cert.</u> <u>denied</u>, 128 S. Ct. 533 (2007);   <u>United States v. Bernard</u>, 623 F.2d 551, 560-61 (9th Cir. 1980); <u>United States v. Meade</u>, 110 F.3d 190, 193-94 (1st Cir. 1997).

> jurisdictions to rely on flyers or bulletins
> in making stops to investigate past crimes.
>     We conclude that, if a flyer or bulletin
> has been issued on the basis of articulable
> facts supporting a reasonable suspicion that
> the wanted person has committed an offense,
> then reliance on that flyer or bulletin
> justifies a stop to check identification,
> [citation omitted] to pose questions to the
> person, or to detain the person briefly while
> attempting to obtain further information.
>     * * * * *
> Assuming the police make a *Terry* stop in
> objective reliance on a flyer or bulletin, we
> hold that the evidence uncovered in the
> course of the stop is admissible if the
> police who issued the flyer or bulletin
> possessed a reasonable suspicion justifying
> a stop, [citation omitted] and if the stop
> that in fact occurred was not significantly
> more intrusive than would have been permitted
> the issuing department.

469 U.S. at 232-33, 105 S. Ct. at 682.   The Supreme Court limited its holding to completed felonies.   The <u>Hensley</u> opinion did not, and the Supreme Court has not, indicated whether a similar analysis would apply to Terry stops based upon completed misdemeanors.

In <u>Grigg</u> the Ninth Circuit stated:

> Despite the misdemeanor-felony distinction,
> and the fact that some courts have relied on
> this distinction to limit <u>Hensley</u>, we decline
> to adopt a *per se* standard that police may
> not conduct a Terry stop to investigate a
> person in connection with a past completed
> misdemeanor simply because of the formal
> classification of the offense. We think it
> depends on the nature of the misdemeanor.
> Circumstances may arise where the police have
> reasonable suspicion to believe that a person
> is wanted in connection with a past
> misdemeanor that the police may reasonably
> consider to be a threat to public safety. []
> We leave that case for another day.
>     We adopt the rule that a reviewing court
> must consider the nature of the misdemeanor

offense in question, with particular
attention to the potential for ongoing or
repeated danger (e.g., drunken and/or
reckless driving), and any risk of escalation
(e.g., disorderly conduct, assault, domestic
violence). An assessment of the "public
safety" factor should be considered within
the totality of the circumstances, when
balancing the privacy interests at stake
against the efficacy of a Terry stop, along
with the possibility that the police may have
alternative means to identify the suspect or
achieve the investigative purpose of the
stop.
*****
Under the circumstances here, it was
unreasonable for the Nampa police to pull
over Grigg on suspicion of having played his
music too loudly where they did not duly
consider the lack of any threat to public
safety, especially given the untested
alternative means of ascertaining Grigg's
identity.

498 F.3d at 1081-83 (internal citations ommitted).

The Court questions the continuing validity of certain portions of the Grigg decision.

Due to a dearth of authority discussing the issue, the Grigg panel looked to state court decisions for its analysis of the scope of the Fourth Amendment's "reasonableness" requirement in this context. The Ninth Circuit found particularly persuasive the decision in Blaisdell v. Commissioner of Public Safety, 375 N.W.2d 880 (Minn. Ct. App. 1985), affirmed on other grounds by 381 N.W.2d 849 (Minn. 1986). Blaisdell is a case factually similar to the instant matter; in Blaisdell the defendant was also accused of a "no-pay" theft from a gas station. The Minnesota Court of Appeals affirmed the lower court's conclusion that the warrantless stop of Mr. Blaisdell was unreasonable

under the Fourth Amendment after balancing the reasonableness factors stated in <u>Hensley</u>.  The Minnesota Court of Appeals based this conclusion in part upon the basis that a misdemeanor offense is less serious than a felony and Minnesota police may not perform warrantless arrests for misdemeanors unless committed in their presence. Accordingly, a Terry stop two months after the theft was not permissible for the completed misdemeanor offense.

The <u>Grigg</u> panel interpreted the <u>Blaisdell</u> holding as constituting a *per se* rule that, in Minnesota, <u>Hensley</u> was not applicable to completed misdemeanor conduct.   However, the Minnesota Supreme Court affirmed <u>Blaisdell</u> on grounds different from that relied upon by <u>Grigg</u>.  See <u>Blaisdell</u>, 381 N.W.2d at 850 (Scott, J., dissenting).  Additionally, in an unpublished decision issued after <u>Grigg</u> was decided the Minnesota Court of Appeals distinguished its prior decision in <u>Blaisdell</u>.  See <u>Minnesota v. Dobsinski</u>, 2007 WL 738688 (Minn. Ct. App.).  The <u>Dobinski</u> panel found <u>Blaisdell</u> inapplicable to a misdemeanor shoplifting prosecution wherein the defendant was apprehended minutes after the theft. Accordingly, it would appear that <u>Blaisdell</u> no longer constitutes a bright line rule, even in Minnesota.

As noted *supra*, in <u>Grigg</u> the Ninth Circuit reviewed state authority when determining the reasonableness of <u>Terry</u> stops for completed misdemeanors under the Fourth Amendment. The Ninth Circuit noted that, in all states within its jurisdiction with the exceptions of Hawaii and Oregon, police

-10-

officers are prohibited by state law from performing warrantless arrests for misdemeanors not committed in their presence.  The <u>Grigg</u> panel included Arizona in this conclusion, however, the Ninth Circuit erred in reaching this conclusion about Arizona state law.  <u>See</u> Ariz. Rev. Stat. Ann. § 13-3883(A)(4) (2001 & Supp. 2007).[3]

Furthermore, in <u>Virginia v. Moore</u>, 128 S. Ct. 1598, 1606-07 (2008), the Supreme Court held that state laws restricting the police's power to arrest citizens do not define the scope of the Fourth Amendment's protections because the scope of the Amendment's "reasonableness" provisions must be defined by federal common law.  In so holding, the Supreme Court indicated that "bright-line" constitutional standards apply to the Fourth Amendment reasonableness analysis and that a federal court's looking to state law to determine these questions would result in a vague and unpredictable standard.  <u>See also</u> <u>Barry v. Fowler</u>, 902 F.2d 770, 772 (9th Cir. 1990) ("The requirement that

[3] This statute provides:
A. A peace officer may, without a warrant, arrest a person if he has probable cause to believe:
1. A felony has been committed and probable cause to believe the person to be arrested has committed the felony.
2. A misdemeanor has been committed in his presence and probable cause to believe the person to be arrested has committed the offense.
3. The person to be arrested has been involved in a traffic accident and violated any criminal section of title 28, and that such violation occurred prior to or immediately following such traffic accident.
4. A misdemeanor or a petty offense has been committed and probable cause to believe the person to be arrested has committed the offense....

a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not grounded in the Fourth Amendment"); <u>United States v. Smith</u>, 73 F.3d 1414, 1416 (6th Cir. 1996) ("A police officer is permitted to make an arrest without a warrant for a misdemeanor committed in his presence. [] However, this requirement that a misdemeanor must have occurred in the officer's presence to justify a warrantless arrest is not mandated by the Fourth Amendment; it is merely a rule of the common law. []....The defendant's argument that the officers could not stop him because a misdemeanor had been completed is meritless").

In balancing an individual's Fourth Amendment right to be free of an unreasonable search or seizure against that of law enforcement's need to stop an individual for investigative purposes regarding a completed misdemeanor, the <u>Grigg</u> court also indicated the reviewing court should consider whether the police have alternative means available to identify the suspect or achieve the investigative purpose of the stop. <u>See</u> 498 F.3d at 1081. The Ninth Circuit did not indicate the source of this requirement and it appears to be inconsistent with the Supreme Court's holding in <u>United States v. Sokolow</u>, 490 U.S. 1, 109 S. Ct. 1581 (1989).

> The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift, on-the-spot decisions - here, respondent was about to get into a taxicab - and it would require courts to "indulge in 'unrealistic second-guessing.'"

409 U.S. at 11, 109 S. Ct. at 1587.

Notwithstanding the above, the Court will now turn to the applicability of <u>Grigg</u> to Mr. Cheek's circumstance. The <u>Grigg</u> analysis is limited to <u>completed</u> misdemeanors.   <u>See</u> 498 F.3d at 1081. Defendant's criminal conduct was not completed at the time he was stopped by the Ranger because flight is part of the conduct examined when determining whether an offense has come to rest.   <u>Cf.</u> <u>United States v. Barlow</u>, 470 F.2d 1245, 1252-53 (D.C. Cir. 1972) ("The crime of larceny obviously continues as long as the asportation continues ...").

Additionally, although Defendant pled guilty in a city court to the crime of theft of services, his admission to the elements of that crime does not define the scope of the Ranger's conduct for Fourth Amendment purposes.   The Court must look to the events leading up to the stop and during the stop to determine if the stop was "reasonable."   <u>See</u>, <u>e.g.</u>, <u>Ornelas v. United States</u>, 517 U.S. 690, 695-96, 116 S. Ct. 1657, 1661-62 (1996).   The Court notes, accordingly, that Defendant's possession of the stolen gas was a continuing offense in violation of Arizona Revised Statutes § 13-1802(A)(1) & (5). Furthermore, when Defendant entered the boundaries of the Glen Canyon National Recreation Area his possession of the stolen gasoline constituted a continuing offense pursuant to 36 C.F.R. §2.30(a)(1) & (5).   Because the Fourth Amendment analysis must be conducted from the standpoint of an objectively reasonable police officer, based upon the facts known to him at the time, Ranger St. Clair's subjective motivation in stopping Defendant,

-13-

i.e., the Page Police Department's ATL, is not determinative. Accordingly, Grigg is not applicable because Defendant's conduct constituted continuing misdemeanor crimes and not a completed misdemeanor.

However, assuming in the alternative that Defendant's criminal conduct had come to rest prior to the stop by Ranger St. Clair, the Court will review the balancing factors set forth in Grigg.

First, the Court must consider the nature of the criminal conduct under investigation. As compared to the circumstances in Grigg, the Page Police Department was not investigating an "innocuous" past offense which may have merely been a civil infraction. Although Grigg's alleged behavior, playing loud music, may have been offensive to the complaining neighbor, it could hardly be characterized as creating exigent circumstances. Comparatively, the theft of gasoline in Page by means of a "drive-off" is a common occurrence. Without the benefit of effective and speedy law enforcement interdiction Page gas station owners would incur substantial monetary loss. Furthermore, after Defendant fled the gas station he immediately left the City of Page. When Defendant was stopped, mere minutes after the alleged theft, he was quite near the Utah-Arizona state line. If Ranger St. Clair had not stopped Defendant he would likely have continued into Utah where he would have been outside the jurisdiction of the Arizona authorities.

Accordingly, the exigent nature of the offense in this matter is clearly distinguishable from that in Grigg. See

-14-

Illinois v. Wardlow, 528 U.S. 119, 125, 120 S. Ct. 673, 676-77 (2000) (holding that unprovoked flight is a permissible factor for police to consider when conducting a Terry stop); United States v. Moran, 503 F.3d 1135, 1142-43 (10th Cir. 2007) (holding that proximity in time, location, and possible flight by a suspect are important factors in the Fourth Amendment reasonableness analysis).

The Court now turns to the alternative investigation requirement of Grigg. Defendant forcefully argued at the suppression hearing that, because the Page Police Department had a partial Arizona license plate number, and because Defendant was seen on the gas station video-tape, and because a gift card was left behind at the gas station by Defendant, the police had the means to conduct an adequate investigation to determine the identity of the drive-off perpetrator without the Terry stop imposed on Defendant. Defendant's arguments are not persuasive.

The Page gas station clerk reported the perpetrator's vehicle as a tan SUV, however, the model or manufacturer of the vehicle was not known. The gas station clerk reported a partial Arizona plate number of "764," however, the missing three numbers or letters of the license plate were not known. A gift card was left behind at the gas station, which may or may not have had a name on it. It defies common sense to conclude that these three clues constituted an adequate means of investigation of the crime which would outweigh the imposition of the Terry stop. The fact that the clerk was able to record a partial license plate number does not equate to the conclusion that law

-15-

enforcement will be able to later identify the driver, the owner, or the location of the vehicle. The vehicle could have been stolen, the license plate could have been stolen, or the vehicle could have been driven by someone other than its registered owner. Similarly, requiring a Page Police Department officer to perform any available computer database search to locate all Arizona vehicles with a partial license plate number of "764", rather than issue the ATL moments after the drive off, would be unreasonable. Moreover, even assuming the gift card left at the gas station by Defendant had a name on it, there is no assurance it would have been the suspect's correct name. Additionally, in order to obtain identifying account information from the company issuing the gift card would in all likelihood have required extensive time, including the use of subpoenas or court orders. See 12 U.S.C. § 3402 (2001 & Supp. 2008). The reasonableness of the officer's actions are to be judged by an objective standard based upon the information available to the officer at the time, not that available by hindsight. See Ornelas, 517 U.S. at 696, 116 S. Ct. at 1661.

The reasonableness of the law enforcement officer's need for the stop must be balanced against Defendant's Fourth Amendment rights. Every individual has a constitutional right to be free from arbitrary or unreasonable stops by police. See, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S. Ct. 2574, 2579 (1975). However, Terry stops of vehicles along public roadways, while intruding upon one's constitutional rights, are far less intrusive than other forms of Terry stops

-16-

such as a "stop and frisk" on a street corner. See, e.g., United States v. Wheat, 278 F.3d 722, 737 (8th Cir. 2001). As compared to the defendant in Grigg, Defendant was not simply "going about his lawful business" when stopped by Ranger St. Clair; Defendant was fleeing a crime scene. Under such circumstances the stop by Ranger St. Clair was a minimal intrusion.

Balancing Defendant's Fourth Amendment right to be free from arbitrary or unreasonable stops by the police against the needs of the public and the police to effective law enforcement, the Court concludes Defendant's Fourth Amendment rights were not violated by the stop of his vehicle to make inquiry as to whether he had failed to pay for the gas at the Page gas station. Because the Court has concluded Defendant's Fourth Amendment rights were not violated, the Court need not address the applicability of the exclusionary rule to this matter. See United States v. Herring, 492 F.3d 1212, 1215-16 (11th Cir. 2007), cert. granted 128 S. Ct. 1221 (Feb. 19, 2008).

Accordingly, Defendant's motion to suppress is **DENIED**.

## B. Motion to Dismiss

Defendant has moved to dismiss Citation No. P0358773, charging Defendant with providing false information to the NPS in violation of 36 C.F.R. §2.32(a)(3). This section prohibits "Knowingly giving a false or fictitious report or other false information [t]o an authorized person investigating an accident or violation of law or regulation...."

-17-

Defendant argues that, because Ranger St. Clair did not have jurisdiction to investigate the theft of the gasoline in the City of Page and because the Ranger admitted that he was not investigating any potential NPS regulatory offense when Defendant was stopped, Defendant's alleged false denial of being present at the gas station could not, as a matter of law, constitute a violation of 36 C.F.R. §2.32(a)(3). Defendant presents a regulatory interpretation issue which is apparently one of first impression for any federal court.

When interpreting the scope of a federal regulation the Court must first look to the regulation's plain language. It is presumed that the drafters of a regulation "...said what they meant and meant what they said." Accordingly, unless such an interpretation leads to an absurd result, the plain meaning of a regulation controls the Court's interpretation of the regulation. See United States v. Bucher, 375 F.3d 929, 932 (9th Cir. 2004). The Court must also give effect to each term of the regulation. See, e.g., American Rivers v. FERC, 201 F.3d 1186, 1204 (9th Cir. 2000).

Applying these principles, the Court concludes that, to be found in violation of section 2.32(a)(3), the allegedly false information must have been given to an "authorized person." The fact that Ranger St. Clair is a law enforcement officer for the NPS seems to meet this requirement. However, the regulation also requires that the "authorized person" be investigating a "violation of law or regulation," rather than conducting just any investigation. The regulation does not specify what type of

-18-

"law or regulation" it is intended to address, leaving open the question of whether the regulation pertains solely to those investigating the potential violation of federal laws or NPS regulations.

The Court's review of prior reported and unreported decisions has not revealed a single decision specifically discussing the scope of §2.32(a)(3). The panel which decided Bucher summarized the meager legislative history behind the original enactment of this section in 1983. Bucher indicated the intent of the regulation was to ensure that government operations proceed without interference. Based upon this admittedly sparse legislative history, the Court concludes the term "law or regulation" is intended to refer to federal laws and regulations governing federal enclaves, such as the GCNRA.

This conclusion is supported by comparison to a similar statute, i.e., 18 U.S.C. § 1001, which has been more extensively examined by the federal courts. This statute states, in pertinent part: "Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully... makes any materially false, fictitious, or fraudulent statement or representation....[shall be fined or imprisoned.]". The term "jurisdiction" as used in section 1001 serves a similarly restrictive function as the term "law or regulation" found in §2.32(a)(3). Accordingly, the Court will rely on the authority defining the term "jurisdiction" in section 1001 in deciding Defendant's motion

-19-

with regard to section 2.32(a)(3).  In <u>United States v. Rodgers</u>, 466 U.S. 475, 104 S. Ct. 1942 (1984) the Supreme Court defined the term "jurisdiction" as found in section 1001. The Supreme Court determined a federal agency has jurisdiction "...when it has the power to exercise authority in a particular situation." The Supreme Court further concluded that, "[u]nderstood in this way, the phrase 'within the jurisdiction' merely differentiates the official, authorized functions of an agency or department from matters peripheral to the business of that body."  466 U.S. at 479, 104 S. Ct. at 1946.

Although an argument could be made that, pursuant to 16 U.S.C. §§ 1b(1) and 1a-6(c)(2) and the mutual assistance agreement between the NPS and the City of Page, the NPS had "jurisdiction" when Ranger St. Clair asked Defendant if he had been present at the Page gas station, the "authority" being exercised, <u>see</u> <u>id.</u>, by the Ranger at that time was that of the Page Police Department.  Ranger St. Clair testified the only reason for the stop and his inquiry was to assist the Page police in their investigation of the gasoline theft. Accordingly, Defendant's motion to dismiss Citation PO358773 is **GRANTED**.

**Conclusion**

Defendant's Fourth Amendment rights were not violated by the traffic stop initiated by Ranger St. Clair and, accordingly, suppression of any evidence resulting from the stop is not warranted.  However, the Court concludes that, because Ranger St. Clair did not stop Defendant to inquire as to his

potential involvement in violation of a federal statute or regulation, Defendant's untruthful statement to the Ranger did not constitute a violation of 36 C.F.R. §2.32(a)(3).

**THEREFORE, IT IS ORDERED that** Defendant's motion to suppress is **denied** and Defendant's motion to dismiss Citation PO358773 is **granted** and this citation is **dismissed with prejudice**.

DATED this 7th day of October, 2008.


_____
Mark E. Aspey
United States Magistrate Judge

-21-